IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WILSON, | No. CIV S-07-0497-RRB-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| J. BUTLER, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is the motion to dismiss filed by defendants Butler, Wiley, Magee, Sandy, Stewart, Rodriguez, Brown, Long, and Carey (Doc. 16). Defendants Fonville and Jackson have filed a joinder (Doc. 21) to this motion. Plaintiff has filed an opposition (Doc. 20), and defendants filed a reply (Doc. 26). Defendants have also filed a request for judicial notice and the declaration of M. Schafer, the custodian of records (Doc. 27).[1]

/ / /

/ / /

---

[1] Defendants ask the court to take judicial notice of a rules violation report upon which the complaint relies. Plaintiff does not object. This request should be granted.

1

## I. BACKGROUND

This action proceeds on plaintiff's first amended complaint (Doc. 11) against Butler, Wiley, Jackson, Magee, Sandy, Stewart, Fonville, Rodriguez, Brown, Long, Valdez, and Carey.[2] Plaintiff claims violations of his constitutional rights resulting from a rules violation report issued against him which resulted in loss of good-time credits. He states that, on August 2, 2004, he was "hanging out with some religious associates" on the prison recreation yard alongside a fence which is adjacent to an inmate housing facility. According to plaintiff, defendant Butler approached the group and told them to "get off the fence." Plaintiff states that, when Butler asked for plaintiff's identification card, he responded that he did not have it with him because his pants had no pockets. Defendant Butler then ordered plaintiff to "go to the Center Complex" and plaintiff states that he responded: "I'm not going. I'm off the fence already." Plaintiff alleges that defendant Butler than "took unlawful and departmentally unauthorized measures of confiscating my bag of food items." Plaintiff states that he "instinctively" attempted to protect his items by reaching towards defendant Butler to retrieve his bag. Plaintiff was later issued a rules violation report charging him with battery on a correctional officer. According to the rules violation report, plaintiff made contact with defendant Butler when he was attempting to retrieve his items. Plaintiff claims that defendant Butler acted "maliciously to cause . . . hardship . . . ."

Plaintiff states that defendant Wiley "designed his report to support a battery on a peace officer (his friend . . . [defendant Butler])." Specifically, plaintiff claims that defendant Wiley falsely reported that he witnessed the incident when it is "evident by his report that he did not witness the incident, but just wanted to support his co-worker." Plaintiff alleges that defendant Wiley's report does not contain any mention of the bag of food items. According to plaintiff, defendant Wiley's allegedly false report denied his due process.

---

[2] Defendant Valdez has not been served.

Plaintiff states that defendant Jackson was responsible for reviewing the rules violation report submitted by defendant Butler. According to plaintiff, defendant Jackson ratified the false rules violation report, which did not comply with departmental regulations.

Plaintiff alleges that defendant Magee conducted the investigation regarding the rules violation report. Plaintiff claims that defendant Magee conducted the investigation with a "predetermination of guilt" and altered witness statements.

Plaintiff states that defendant Sandy conducted a prison disciplinary hearing on the rules violation report on September 18, 2004. He states that, although plaintiff's inmate witness approached defendant Sandy to inform her that defendant Magee had falsified their statements, defendant Sandy did nothing to correct the problem. Plaintiff also states that defendant Sandy stopped the hearing after defendant Magee was caught in a lie in order "to protect [defendant Magee] from further incriminating himself."

Plaintiff claims that defendant Stewart conducted another disciplinary hearing on the rules violation report on February 4, 2005, and that, in the course of this hearing, defendant Stewart allowed numerous violations of the regulations to occur. Specifically, plaintiff alleges that defendant Stewart permitted defendant Butler to be present at the hearing and that, when plaintiff asked questions, defendant Stewart would inaccurately rephrase them.

Plaintiff states that defendant Fonville was his correctional counselor and that, on March 3, 2005, she proposed a maximum security housing assignment as a result of plaintiff's being found guilty of the rules violation. Plaintiff claims that defendant Fonville made this recommendation despite her knowledge of the procedural violations which had occurred during his disciplinary hearing.

Plaintiff claims that defendants Rodriguez and Brown, as members of the classification committee responsible for determining plaintiff's housing status, allowed plaintiff to be classified to maximum security as a result of the rules violation, despite his knowledge of "procedural violations and mitigating factors."

Plaintiff states that defendant Long was responsible for deciding his appeal of the guilty finding and, despite the procedural problems, he affirmed the guilty finding.

Plaintiff alleges that defendant Valdez "circumvented [his] appeals by systematically denying [his] appeals."

Finally, as to defendant Carey, who was the prison warden at the time, plaintiff claims that he was made aware of all the problems alleged above and did nothing to prevent violations of plaintiff's due process rights. Plaintiff claims that defendant Carey failed to intervene to stop the violations and that he failed to provide an adequate appeals process.

## II. STANDARDS FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true. See Erickson v. Pardus, 127 S.Ct. 2197 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct.1955, 1964-65 (2007). Allegations of specific facts are not necessary so

long as the statement of facts gives the defendant fair notice of what the claim is and the grounds upon which it rests.  See Erickson, 127 S.Ct. at 2197.

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

Under these standards, a statute of limitations defense may be raised in a motion to dismiss.  Finally, leave to amend must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## III. DISCUSSION

Based on the factual allegations outlined above, plaintiff complains about the following:  (1) confiscation of bag of food items by defendant Butler; (2) issuance of rules violation report by defendant Butler; (3) witness report by defendant Wiley; (4) review and investigation of rules violation report by defendants Jackson and Magee; (5) prison disciplinary hearings conducted by defendants Sandy and Stewart; (6) maximum security housing recommendation and classification by defendants Fonville, Rodriguez, and Brown; and (7) processing of inmate grievances by defendants Long and Valdez. Plaintiff also claims that defendant Carey was aware of constitutional violations and is liable as a supervisor.

### A. Issuance, Review, and Investigation of Rules Violation Report

Plaintiff sets forth various allegations concerning issuance, review, and investigation of the rules violation report resulting from the August 2, 2004, incident. Specifically, he asserts that defendant Butler improperly issued the rules violation report "maliciously to cause . . . hardship . . . ." Plaintiff also claims that defendant Wiley falsified his witness report regarding the incident. As to defendants Jackson and Magee, plaintiff claims they are liable with respect to their review and investigation of the rules violation report. In the motion to dismiss, defendants argue that plaintiff's claims concerning the rules violation report are not cognizable because success would necessarily imply the invalidity of the resulting prison disciplinary process.

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam). Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. See Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that § 1983 claim not cognizable

because allegations of procedural defects were an attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and not to any particular parole determination). In particular, where the claim involves loss of good-time credits as a result of an adverse prison disciplinary finding, the claim is not cognizable. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997). If a § 1983 complaint states claims which sound in habeas, the court should not convert the complaint into a habeas petition. See id.; Trimble, 49 F.3d at 586. Rather, such claims must be dismissed without prejudice and the complaint should proceed on any remaining cognizable § 1983 claims. See Balisok, 520 U.S. at 649; Heck, 512 U.S. at 487; Trimble, 49 F.3d at 585.

As defendants note, plaintiff's claims necessarily imply the invalidity of the prison disciplinary hearing resulting from the rules violation report. In particular, plaintiff claims in the amended complaint the he is not guilty of the charged violation. He also alleges that the guilty finding resulted in the loss of good-time credits and he seeks an injunction ordering the "restoration of all . . . time loss credits (as if before being found guilty)." Therefore, the court agrees with defendants that claims relating to issuance of the rules violation report are not cognizable in a § 1983 action until and unless plaintiff has first obtained reversal or expungement of the guilty finding by way of habeas corpus. These claims should be dismissed without prejudice.

Plaintiff's opposition to dismiss is based on his repeated contentions that the guilty finding resulted from defendants' alleged lies and deceit and that he should be allowed to seek redress in the context of a civil rights action. The court does not say that plaintiff is necessarily wrong in this regard. Rather, the question is one of timing. Plaintiff may indeed be able to seek redress for the defendants' alleged conduct, but only after first obtaining reversal or expungement of the underlying disciplinary finding. This § 1983 action is simply not the correct vehicle for that preliminary determination.

### B.  Prison Disciplinary Hearings

As to the prison disciplinary hearing which resulted from the rules violation report, plaintiff claims that the result was based on false information and various procedural violations. To the extent plaintiff's claims would imply the invalidity of the guilty finding, they are not cognizable for the reasons discussed above.

As to procedural protections, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 536-70 (1974). Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

In this case, plaintiff states that defendant Sandy stopped the disciplinary hearing after defendant Magee was caught in a lie in order "to protect [defendant Magee] from further incriminating himself." He also claims that defendant Stewart, who conducted a second disciplinary hearing, permitted defendant Butler to be present at the hearing and that, when plaintiff asked questions, defendant Stewart would inaccurately rephrase them. These allegations go to the validity of guilty finding and do not implicate the procedural protections guaranteed by due process. In particular, plaintiff does not allege that he was denied notice, assistance, or an

opportunity to be heard.  Again, to the extent plaintiff's claims challenge the validity of the guilty finding, the claims are not cognizable.

### C.  Confiscation of Property

Plaintiff appears to assert a due process violation based on defendant Butler's confiscation of his bag of food items.  Where a prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  An available state common law tort claim procedure to recover the value of property is an adequate remedy. See Zinermon, 494 U.S. at 128-29.

Defendants are correct that plaintiff cannot state a due process claim based on the allegedly unauthorized deprivation of his property because adequate post-deprivation remedies exist.  Specifically, plaintiff can pursue state law tort claims to redress the deprivation of property.  In fact, plaintiff states that he sought such remedies by filing a claim with the California Board of Control.

### D.  Housing Recommendation and Classification

Plaintiff cannot state any cognizable claim based on being housed in maximum security.  The Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).  Because there is no liberty interest in remaining in the general population or in retaining privileges, it follows that there is also no liberty interest in remaining

in a lower security housing unit.

### E. Inmate Grievances

Plaintiff alleges that defendants Long and Valdez are liable with respect to their handling of plaintiff's inmate grievances. Prisoners, however, have no stand-alone due process right to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Therefore, the court agrees with defendants that plaintiff does not state any cognizable claim against defendants Long and Valdez.

### F. Supervisory Liability

Plaintiff alleges that defendant Carey – the prison warden – knew of constitutional violations and did nothing to prevent them. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or had actual knowledge of the violations and failed to act to prevent them. See id. When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

For the reasons discussed above, the court finds that plaintiff has not stated any cognizable claim of a constitutional violation. Therefore, there is no basis for supervisory liability.

/ / /

/ / /

## IV.  CONCLUSION

For the reasons discussed above, the court finds that dismissal of this action, without prejudice, is appropriate.  This findings is not inconsistent with the court's August 16, 2007, order in which the court merely stated that, upon initial screening of the amended complaint, the action "appears" to state cognizable claims.  That order never operated to foreclose defendants' right to challenge the sufficiency of the pleading by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Based on the foregoing, the undersigned recommends that:

1. Defendants' request for judicial notice (Doc. 27) be granted;
2. Defendants' motion to dismiss (Docs. 16 and 21) be granted;
3. This action be dismissed without prejudice; and
4. The Clerk of the Court be directed to enter judgment of dismissal and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 27, 2008

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE